IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| HOMER FRANKLIN PHILLIPS,<br><br>    Plaintiff,<br><br>v.<br><br>CLEARSTAR, INC.,<br><br>    Defendant. | Case No.: 5:24-cv-00006<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Homer Franklin Phillips ("Plaintiff" or "Mr. Phillips") by and through his counsel brings the following Complaint against ClearStar, Inc. ("Defendant" or "ClearStar") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment purposed consumer report – also called a background check report -- that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted sex offender.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

1

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of felony sex offenses. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff is not a sex offender.

5. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment purposed consumer report from Defendant, which included the inaccurate felony convictions, which do not belong to Plaintiff.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available public court records from Waynesboro, Virginia regarding the felony convictions prior to publishing Plaintiff's report to his prospective employer.

7. Had Defendant performed even a cursory review of the public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by different first name, middle name, last name, date of birth, social security number, and address.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate report cost Plaintiff a good-paying job and job security.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the criminal records that do not belong to him** – was inaccurate and delete the disputed information from the subject employment purposed report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

13. Homer Franklin Phillips ("Plaintiff" or "Mr. Phillips") is a natural person residing in Waynesboro, Virginia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant ClearStar, Inc. ("Defendant" or "ClearStar") is a Georgia corporation doing business throughout the United States, including the Commonwealth of Virginia and in this District, and has a principal place of business located at 6250 Shiloh Road, Suite 300, Alpharetta, GA 30005. Defendant ClearStar can be served at its registered agent Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corner, GA, 30092.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such

as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

**THE FCRA'S PROTECTIONS FOR JOB APPLICANTS**

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment purposed consumer reports such as the background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

---

[1] CFPB, *Market Snapshot: Background Screening Reports* (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting felony convictions that belong to an unrelated consumer who has a different name, address, social security number, and date of birth than Plaintiff.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements.

40. Defendant claims to be not only accredited by the Professional Background Screening Association ("PBSA"), but it is a founding member of the PBSA. PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

41. Defendant also claims to hold other accreditations and certificates from the American Institute of Certified Public Accountants (AICPA), Data Privacy Framework Program, Nationally Accredited for Administration of Drug and Alcohol Testing Programs (NAADTP); American Association of Medical Review Officers, Inc. (AAMRO); and the Better Business Bureau (BBB).

## FACTS
### Plaintiff Applies for a Job with Shamrock

42. On or about December 4, 2023, Plaintiff applied for full-time employment as a Forklift Operator with Shamrock.

43. Upon applying to Shamrock, Plaintiff successfully completed an interview and passed a drug test.

44. On or about October 20, 2022, Shamrock extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check, which is an employment-purposed consumer report. ("consumer report.")

### Defendant Published an Inaccurate Background Check Report to Shamrock

45. Shamrock contracted with Defendant to provide consumer reports, including criminal background checks, on its prospective employees.

46. On or about December 8, 2023, Shamrock ordered a consumer report about Plaintiff from Defendant.

47. On or about December 21, 2023, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold it to Shamrock.

48. Within that consumer report, Defendant published inaccurate information about Plaintiff.

49. Specifically, Defendant's consumer report about Plaintiff included two grossly inaccurate and stigmatizing felony sex offense convictions from Waynesboro, Virginia.

50. The criminal convictions reported by Defendant about Plaintiff to Shamrock ***do not*** belong to Plaintiff.

51. Plaintiff has never been charged with or convicted of a sex offense- related crime in his life.

52. A cursory review of the widely available public court records confirms that the records belong to an unrelated male, Frankie Myles Wood ("Convicted Felon Wood").

53. Had Defendant actually consulted or obtained the widely available public court records regarding the two convictions, it would have seen obvious discrepancies between Convicted Felon Wood and Plaintiff.

54. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Wood include the following:

    (a)    Plaintiff's legal name is "Homer Franklin Phillips" and the criminal records belong to a "Frankie Myles Wood," which is both clearly indicated on the face of the consumer report and in the widely available public records from Waynesboro, Virginia;

    (b)    Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject consumer report, is June 12, 1984, yet the underlying public court records indicate that Convicted Felon Wood's date of birth is April 28, 1985;

  (c) Convicted Felon Wood's address is reported on the public records as being located in Stuarts Draft, VA 24477. Plaintiff has never been associated with this zip code; and,

  (d) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject consumer report is entirely different than that of Convicted Felon Wood.

55. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

56. Upon information and belief, Defendant used an automated process and loose matching criteria that caused it to mix Convicted Felon Wood into the Plaintiff's consumer report.

57. The Office of the Executive Secretary of the Supreme Court of Virginia explicitly informs the public and entities to whom it sells Virginia public records, including court records, that information available on its website about court records are not warranted as accurate.

58. The only accurate source of Virginia court records is the originating court where the actual court records are maintained.

59. The website where Virginia court records are made available electronically also explicitly disclaims the accuracy of the electronic court records and warns users that the only accurate source of Virginia court records is the originating court where the actual court records are maintained.

60.     Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different name than Plaintiff, a different date of birth, a different Social Security Number, and who resides in a different city than Plaintiff.

61.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Shamrock Denies Plaintiff's Job Application**

62.     On or about December 21, 2023, Plaintiff was notified by Shamrock that his employment application was pending as a direct result of the felony convictions reported by Defendant.

63.     Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Convicted Felon Wood, were published in the consumer report Defendant sold about Plaintiff to Shamrock.

64.     Plaintiff contacted Shamrock and informed them that he is not Convicted Felon Wood. Plaintiff explained that the serious criminal convictions of Convicted Felon Wood do not belong to him.

65.     Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Wood's serious criminal convictions reported on the subject consumer report – specifically, the impact of the same on his future.

66. Specifically, Defendant matched Plaintiff and Convicted Felon Wood and published the criminal records of Convicted Felon Wood onto the consumer report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Shamrock, but Defendant failed to perform even a cursory review of such information.

### Plaintiff Disputed the Misinformation in his Consumer Report

67. On December 22, 2023, desperate to secure employment with Shamrock and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via email with Defendant.

68. Plaintiff identified himself and provided information to Defendant to support his dispute.

69. Plaintiff specifically disputed the criminal records of Convicted Felon Wood.

70. Plaintiff specifically stated that the criminal records of Convicted Felon Wood do not belong to Plaintiff.

71. Plaintiff specifically asked Defendant to investigate and delete Convicted Felon Wood's criminal records from any consumer report about Plaintiff.

72. On December 28, 2023, Shamrock notified Plaintiff that they would not be moving forward with his employment as a result of the felony convictions reported on his background report.

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Consumer Report**

73. On January 3, 2024, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and determined that its reporting was accurate and that it would not correct the subject consumer report otherwise.

74. Defendant failed to issue a corrected consumer report to Shamrock.

75. Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's December 2023 dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

76. Because Defendant failed to issue a corrected consumer report, Shamrock did not reinstate its job offer to Plaintiff.

77. But for Defendant's inaccurate consumer report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

78. Defendant's false report cost Plaintiff a promising, well-paying job with Shamrock.

79. The position with Shamrock was full-time and Plaintiff was set to earn $22.00 per hour with a competitive benefits package.

80. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

81. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

82. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

83. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

84. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

85. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

86. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

87. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep;

lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

88. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

89. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

90. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

91. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

92. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

93. On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in

the consumer report that is patently inaccurate, misleading, and highly damaging to him, namely, stating that he is a convicted felon.

94. In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the consumer report and refused to correct the consumer report at issue.

95. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject consumer report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

96. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

97. Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

98. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 31st day of January 2024.

**CONSUMER ATTORNEYS**

/s/Susan Mary Rotkis
Susan Mary Rotkis
VSB 40693
Attorney for Plaintiff Homer Franklin Phillips
Consumer Attorneys
2290 East Speedway Blvd.
Tucson, AZ 85719
T: 602-807-1504
F: 718-715-1750
E: srotkis@consumerattorneys.com